IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:04CR511 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Paul R. Matia |
| vs | ) | |
| | ) | |
| PASQUALE DONOFRIO, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S RESPONSE TO
PASQUALE DONOFRIO'S SENTENCING MEMORANDUM

The United States of America, through its undersigned attorney, opposes defendant Donofrio's request for a downward departure. Consistent with the advisory Sentencing Guidelines calculation in the plea agreement, the Probation Department has scored defendant Donofrio as total offense level 14, Criminal History Category I, corresponding to a sentencing range of 15-21 months. For the reasons stated below, the government requests the Court to sentence defendant within that advisory range.

DISCUSSION

Defendant suggests that he should receive a downward departure for four reasons: (1) he has deposited $70,000 with the Internal Revenue Service towards his civil tax liability,[1] (2) he rendered substantial assistance to the government, (3) he engaged in aberrant behavior and (4) his incarceration would harm his and others' businesses. The government respectfully disagrees.

A. The $70,000 Payment and Restitution Considerations

Do Not Warrant a Downward Departure

Although defendant has deposited $70,000 with the Internal Revenue Service towards his civil tax liability, and suggests that a non-incarceration sentence would better enable him to make restitution, this payment and restitution considerations do not warrant a departure. First, the Probation Department has recommended to the Court that under policy of the Administrative Office of the United States Courts, "payment of back income taxes should not be ordered as restitution." See Presentence Report at 18, paragraph 88. Although the Court may generally order defendant to cooperate with the Internal Revenue Service, id, at paragraph 89, the Probation Office considers it inappropriate to order a specific amount of back taxes as restitution. Thus, defendant's claim that no incarceration will better enable him to pay Court-ordered restitution lacks merit because the Probation Department is recommending that there not be any Court-ordered restitution at all.

Second, unlike many economic crime cases where specific members of the community are victimized, the victim here is the Internal Revenue Service. The defendant's ability to pay restitution has less force where there are no human victims who have suffered personal economic

---

[1] The government is advised that this figure may increase to $100,000 before sentencing.

losses. The government, which is the victim, prefers a traditional incarceration sentence to enhance general deterrence, i.e., to encourage other taxpayers to pay income taxes due and owing, lest they also be prosecuted and face jail time.

Third, defendant's $70,000 payment towards his civil tax liability is not extraordinary. The plea agreement calculates the tax loss for which defendant is responsible at between $325,000 and $550,000. See Plea Agreement, at 15. Thus, the tax loss for which defendant Donofrio is responsible, even before calculating interest and penalties, is not less than $325,000. Under these circumstances, the $70,000 payment, which is less than one-fourth of the lowest possible amount of back taxes, does not warrant downward departure. Even if defendant deposits another $30,000 with the Internal Revenue Service before sentencing, he still will have paid less than one-third of the smallest possible amount owed.

The Eighth Circuit's decision in United States v. Garlich, 951 F.2d 161 (8th Cir. 1991), cited by defendant, does not mandate a contrary result. In Garlich, the defendant paid $1.4 million in restitution even though the amount of loss attributable to him was only $253,000. Contrary to defendant Donofrio, who as of this writing has paid less than one-fourth of the lowest possible amount of back taxes owed (before enhancing interest and penalties), Garlich paid over five times his share. Furthermore, unlike defendant Donofrio, Garlich began liquidating assets for purposes of making restitution over a year before indictment and well before he knew about the government's investigation.

Nor does the Seventh Circuit's decision in United States v. Carey, 895 F.2d 318 (7th Cir. 1990), support a downward departure for defendant Donofrio. In Carey, the defendant

commenced voluntary restitution prior to indictment. Id. at 322. Defendant Donofrio did not. Moreover, by time of sentencing in Carey, the defendant had repaid $200,000 of the victim's $220,000 in losses, a far larger percentage (91%) than defendant Donofrio has paid (less than 25%-33% of the lowest possible amount owed). Finally, the victim in Carey was a bank that had suffered actual losses rather than the Internal Revenue Service, whose loss is a general decrease in tax revenue.

In summary, neither the defendant's deposit of $70,000 towards his civil tax liability nor considerations of restitution justify a departure from a traditional jail sentence.

### B. Defendant Has Not Rendered Substantial Assistance

Contrary to defendant's assertion, he has not rendered substantial assistance; the government declines to move for a downward departure under Section 5K1.1 of the Sentencing Guidelines. Although defendant seeks relief under Section 5K2.0, departure for substantial assistance is inappropriate under that provision as well.

The government acknowledges that defendant Donofrio engaged in consensual monitoring of another person in an effort to assist the government in making a case against that person. Defendant's efforts, however, were unsuccessful as the third person in question did not make sufficiently incriminating statements on audio tape and did not otherwise provide viable investigative opportunities. The investigative effort, therefore, failed and lacks value to the government. The government strongly urges this Court, therefore, not to accord defendant Donofrio a downward departure for substantial assistance to authorities. See Section 5K1.1(a)(1) & Application Note 3 (indicating that usefulness to the government of defendant's efforts and

the government's assessment of the value of the tendered cooperation should be given substantial weight).

### C. Defendant Should Not Receive a Departure for Aberrant Behavior

Although defendant notes that he has no prior criminal record, that fact merely means that he falls within Criminal History Category I. It does not establish that he engaged in aberrant behavior within the meaning of Section 5K2.20.

Application Note 1 to the 2000 version of Section 5K2.20 defines "aberrant behavior" to be a "single criminal occurrence or single criminal transaction" that was "committed without significant planning" and "was of limited duration". In contrast, defendant Donofrio's tax scheme was of lengthy duration, spanning six years from January 1, 1995 through December 31, 2000. See Plea Agreement, Factual Basis for Guilty Plea at 10-15. It involved multiple criminal transactions, such as weekly skimming of Panini receipts, and the filing of numerous false individual and corporate tax returns.

Furthermore, the factual basis recited in the plea agreement evidences significant planning. Workers were deliberately paid in cash or in a cash/check split to reduce exposure to employee income withholding and FICA taxes. The mix of payment in cash or by cash/check split was adjusted, depending upon Panini's cash flow. Most damaging to any claim of little or no planning is that the defendants maintained multiple sets of books and provided false financial information on a monthly basis to the accountant hired to prepare tax returns.

In short, the defendants' scheme was deliberate, involved numerous illegal acts and went undetected for years. Defendant does not merit a downward departure on the ground of aberrant behavior.

### D. Alleged Economic Harm Does Not Warrant a Downward Departure

Defendant Donofrio avers through argument of counsel that if incarcerated in a traditional prison facility, his various business interests may fail. In addition, he asserts that businesses may fail in which their owners' only relationship to defendant is an arms-length franchise agreement. Although no proof is submitted to support these assertions, the government will respond assuming arguendo that the described risks exist.

Although economic impact upon third parties was not a prohibited factor for departure even before the Guidelines became advisory because of the Supreme Court's decision in Koon v. United States, 116 S. Ct. 2035 (1996), the Sixth Circuit and other courts have held that a downward departure on this basis is certainly discouraged. See United States v. Rutana, 932 F.2d 1155, 1158-59 (6th Cir. 1991); United States v. Morken, 133 F.3d 628, 630 (8th Cir. 1998); United States v. Sharapan, 13 F.3d 781, 784-85 (3d Cir. 1994).

The reason a departure on this basis should not be granted is that defendant's argument has no limit. The notion that defendant's businesses, or other people's businesses, might be harmed if he went to prison would equally apply to any other small business owner or sole proprietor. It cannot be the law that sole proprietors and other small business owners are exempt from imprisonment for committing crimes because of the economic impact upon the defendant's and third parties' businesses.

Any adverse effect on Defendant's own businesses is his own fault for having continuously violated the tax laws. Moreover, defendant's sentencing memorandum does not demonstrate how his imprisonment would be more catastrophic to the interests of third parties than the imprisonment of any other small businessman. Certainly, the interests of third parties with whom defendant has only an arms length franchise relationship do not justify a departure. Such persons would be situated no differently if defendant Donofrio voluntarily elected to retire from the business world altogether. Arms length franchisees can have no reasonable expectation of defendant's perpetual personal assistance. The alleged economic harm to various persons' business interests does not justify a downward departure.

## Conclusion

A primary reason why the government pursues tax prosecutions is not only to punish offenders but also to deter other citizens who may be tempted to cheat. Where the tax loss is as large as in this case, i.e., between $650,000 and $1.1 million in back taxes by the two defendants combined, a non-incarceration sentence would send the wrong message. An alternative sentence as suggested by defendant would signal to business owners that even if they are caught cheating on their taxes(not a certain prospect, to be sure), the consequences will not be severe. Some

might even conclude that such reduced sanctions are worth the risk. Accordingly, the United States requests this Court to impose a sentence within the Guideline range established in the Plea Agreement and in the Presentence Report.

    Respectfully submitted,

    GREGORY A. WHITE
    United States Attorney

By:    /s/ Bernard A. Smith
    Bernard A. Smith
    Assistant U.S. Attorney
    Reg. No. 0013881
    400 U.S. Courthouse
    801 West Superior Avenue
    Cleveland, Ohio 44113
    (216) 622-3929
    (216) 522-7358 fax
    Bernard.Smith@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2005, a copy of foregoing Government's Response to Pasquale Donofrio's Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

By: /s/ Bernard A. Smith
Bernard A. Smith
Assistant U.S. Attorney
Reg. No. 0013881
400 U.S. Courthouse
801 West Superior Avenue
Cleveland, Ohio 44113
(216) 622-3929
(216) 522-7358 fax
Bernard.Smith@usdoj.gov